J-A18015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.C.M., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.D., MOTHER | : | No. 4076 EDA 2017 |

Appeal from the Order Entered November 3, 2017
In the Court of Common Pleas of Monroe County
Orphans' Court at No:  2015-00076

| | | |
|---|---|---|
| IN THE INTEREST OF: E.L.M., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.D., MOTHER | : | No. 4077 EDA 2017 |

Appeal from the Order Entered November 3, 2017
In the Court of Common Pleas of Monroe County
Orphans' Court at No:  2017-00077

| | | |
|---|---|---|
| IN THE INTEREST OF: C.M.M., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.D., MOTHER | : | No. 4078 EDA 2017 |

Appeal from the Order Entered November 3, 2017
In the Court of Common Pleas of Monroe County
Orphans' Court at No:  2015-00078

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D.M., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.D., MOTHER | : | No. 4079 EDA 2017 |

Appeal from the Order Entered November 3, 2017
In the Court of Common Pleas of Monroe County
Orphans' Court at No:  00079-2015

J-A18015-18

BEFORE: STABILE, J., STEVENS*, P.J.E., and STRASSBURGER**, J.

MEMORANDUM BY STABILE, J.: **FILED NOVEMBER 13, 2018**

C.D. ("Mother") appeals from the orders entered on November 3, 2017, in the Court of Common Pleas of Monroe County, denying her petitions, filed *pro se* on August 28, 2017, requesting to appeal the orders involuntarily terminating her parental rights to her four children, *inter alia*. Upon review, we affirm.

By way of background, on November 18, 2015, the Monroe County Children and Youth Services ("CYS") filed petitions for the involuntary termination of the parental rights of Mother and R.M. ("Father") to their daughters, L.C.M., E.L.M., and C.M.M., and their son, A.D.M. (collectively, "Children")[1] pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). The Honorable Jonathan Mark presided over the hearing on the petitions on March 14, 2016, during which Mother, who was then incarcerated in the Monroe County Correctional Facility, was represented by court-appointed counsel.[2] N.T., 9/27/17, at 11. By orders dated and entered on March 16, 2016, the

_____

* Former Justice specially assigned to the Superior Court.

** Retired Senior Judge assigned to the Superior Court.

[1] L.C.M., E.L.M., C.M.M., and A.D.M. were born in July 2011, March 2005, April 2010, and September 2006, respectively.

[2] In addition, Judge Mark presided over the subject proceeding.

-2-

orphans' court involuntarily terminated Mother's and Father's parental rights to Children. Neither Mother nor Father filed notices of appeal.

On July 25, 2017, J.-A.D., Children's maternal grandmother, filed petitions for adoption of Children who have resided with her in kinship care since January 2015. On August 28, 2017, one day prior to the adoption hearing, Mother, acting *pro se*, filed petitions wherein she alleged that she never received notice of the involuntary termination orders, *inter alia*. Mother requested to appeal the orders involuntarily terminating her parental rights. As such, the orphans' court deemed her petitions as requests for permission to appeal *nunc pro tunc*. An evidentiary hearing on Mother's petitions commenced on September 27, 2017, during which Mother, then represented by counsel, testified on direct examination, but she neither concluded that testimony nor was she subjected to cross-examination. The court continued the hearing to November 2, 2017; however, Mother did not appear.

By orders dated November 2, 2017, and entered on November 3, 2017, the orphans' court denied Mother's petitions. Mother filed notices of appeal on December 4, 2017. On December 11, 2017, Mother filed concise statements of errors complained of on appeal.[3] The orphans' court filed its

_____

[3] Mother did not file her concise statements of errors complained of on appeal contemporaneously with her notices of appeal in contravention of Pa.R.A.P. 1925(a)(2)(i) and (b). Because neither CYS nor the Guardian *ad litem* ("GAL") has objected to this procedural defect or claimed any prejudice, we will not

Rule 1925(a) opinion on February 12, 2018. On February 13, 2018, this Court

consolidated Mother's appeals *sua sponte*.

On appeal, Mother raises the following issue for our review:

1. Whether the [c]ourt abused its discretion and/or committed an error of law in terminating Mother's parental rights pursuant to [23 Pa.C.S. §] 2511(a)(1), (2), (5) and (8) and [Section] 2511(b) of the Adoption Act and in failing to permit her *nunc pro tunc* appeal[?]

Mother's brief at 2 (unpaginated).

We review orders denying an appeal *nunc pro tunc* pursuant to an abuse

of discretion standard. ***In the Interest of M.S.K.***, 936 A.2d 103, 104 (Pa.

Super. 2007). "An abuse of discretion is not merely an error of judgment but

is found where the law is 'overridden or misapplied, or the judgment exercised

is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will

as shown by the evidence or the record.'" ***Id.*** (citation omitted).

Pa.R.A.P. 903(a) provides that a notice of appeal "shall be filed within

30 days after the entry of the order from which the appeal is taken." Appellate

courts "may not enlarge the time for filing a notice of appeal. . . ." Pa.R.A.P.

105(b). However, *nunc pro tunc* relief may be granted

when a delay in filing [an appeal] is caused by extraordinary circumstances involving fraud or some breakdown in the court's operation through a default of its officers. Where an appeal is not timely because of non-negligent circumstances, either as they relate to appellant or his counsel, and the appeal is filed within a

---

dismiss her appeals. ***See Bronson v. Kerestes***, 40 A.3d 1253 (Pa. Super. 2012) (Strassburger, J., concurring and dissenting).

short time after the appellant or his counsel learns of and has an opportunity to address the untimeliness, and the time period which elapses is of very short duration, and appellee is not prejudiced by the delay, the court may allow an appeal *nunc pro tunc*.

Our Supreme Court has made it clear that the circumstances occasioning the failure to file an appeal must not stem from counsel's negligence or from a failure to anticipate foreseeable circumstances.

**M.S.K.**, 936 A.2d at 105 (citations omitted); **see also Towey v. Lebow**, 980 A.2d 142, 144 (Pa. Super. 2009) (quoting **Criss v. Wise**, 781 A.2d 1156, 1159 (Pa. 2001)) (stating, in allowing an appeal *nunc pro tunc*, the appellant must prove: "(1) the appellant's notice of appeal was filed late as a result of non-negligent circumstances, either as they relate to the appellant or the appellant's counsel; (2) the appellant filed the notice of appeal shortly after the expiration date; and (3) the appellee was not prejudiced by the delay.")).

Mother asserts on appeal that her prior counsel who represented her during the involuntary termination proceeding was ineffective in failing to provide her notice of the involuntary termination orders. Specifically, she asserts that she transferred to a different prison after the hearing, and that she did not receive notice of the orders at either prison.

Mother testified that she transferred from the Monroe County Correctional Facility to the Northampton County Correctional Facility on a date uncertain. To the best of her recollection, she transferred prisons "toward the end of March [of 2016]." N.T., 9/27/17, at 11-12. Mother's counsel

-5-

introduced as an exhibit a letter from her prior counsel, dated March 25, 2016, and addressed to Mother at the Monroe County Correctional Facility, that notified her of the termination orders. *Id.* at 12; Trial Court Opinion, 2/12/18, at 4, n. 3. Mother testified that she never received prior counsel's letter at either the Monroe or Northampton County Correctional Facilities. N.T., 9/27/17, at 12.

Instantly, in its opinion accompanying the subject orders, the orphans' court concluded that Mother did not meet her burden of proof for *nunc pro tunc* relief because she never completed her testimony on direct examination, and CYS and the GAL were denied the opportunity to cross-examine her. Indeed, Mother did not appear on the second day of the hearing to continue her testimony. The court stated, "No explanation for [Mother's] absence was given before or after the hearing and nothing indicating that the absence was anything other than voluntary was ever presented to th[e] [c]ourt." Trial Court Opinion, 2/12/18, at 8.

The court found as follows.

[Mother] has not alleged[,] and nothing in the record even remotely suggests[,] fraud or a breakdown in the operations of [the c]ourt. Similarly, non-negligent reasons for the delay have not been established. If the allegations of [Mother's] petition[s] are accepted as true, if her partial direct testimony is fully credited, and if cosmic inferences are drawn in her favor, [Mother] has[,] at best[,] established that the failure to timely file an appeal resulted from negligence -- hers or her attorney's -- or, perhaps more accurately, her failure to take reasonable steps to determine the outcome of the termination proceedings or provide her attorney with updated contact information. . . . [S]uch negligence

or inattentiveness are not grounds for obtaining *nunc pro tunc* relief.

*Id.* at 13. Upon review, we discern no abuse of discretion. *See Criss v. Wise*, *supra* at 1160 (stating, "The exception for allowance of an appeal *nunc pro tunc* in non-negligent circumstances is meant to apply only in unique and compelling cases in which the appellant has clearly established that she attempted to file an appeal, but unforeseeable and unavoidable events precluded her from actually doing so.").

Further, Mother did not file petitions for permission to appeal *nunc pro tunc* shortly after the expiration date for filing notices of appeal from the termination orders, which was April 15, 2016. Rather, Mother filed the petitions more than sixteen months after the expiration date.

The court found that Mother "offered no explanation as to when or how she learned of" the involuntary termination orders or for the significant delay in seeking to appeal. Trial Court Opinion, at 2/12/18, at 11. The court reasoned,

> When, as here, the health, safety, needs, welfare, permanency, and best interests of young children are involved, the failure of a party seeking leave to appeal out-of-time to establish when she learned of the order she seeks to appeal or to offer a full explanation for a delay that exceeds one year is even more significant.

*Id.* at 11-12.  We agree.[4]  Because the record reflects that Mother failed to meet her burden of proof, we affirm the orders denying her petitions for *nunc pro tunc* relief.

      Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/13/18</u>

_____

[4] In her brief, Mother addresses her significant delay in filing the petitions for *nunc pro tunc* relief by asserting that she "was in the throes of addiction. . . . [Mother] has since addressed her issues and has been in recovery.  In fact, it was when she entered treatment that she immediately took steps not only to grab hold of her life challenges but in saving her relationship with her children."  Mother's brief at 7 (unpaginated).  Mother asserts, "that event coincides" with when she filed the petitions for permission to appeal *nunc pro tunc*.  **Id.**

  Mother testified that, in April 2016, she was paroled from Northampton County Correctional Facility.  N.T., 9/27/17, at 14.  She testified that she continued to struggle with her substance abuse issues, and, on January 12, 2017, she was re-incarcerated.  *Id.* at 16, 18.  Mother testified that she entered a "sober living program" in April 2017, where she resided at the time of the subject hearing.  *Id.* at 9, 18.

  To the extent Mother asserts that she failed to seek *nunc pro tunc* relief shortly after the expiration of the appeal period because of her substance abuse addiction, we conclude that Mother did not meet her burden of proof. Indeed, granting Mother *nunc pro tunc* relief more than sixteen months after the expiration of the appeal period would prejudice Children who have "the right to have proper parenting and fulfillment of [their] potential in a permanent, healthy, safe environment."  **In re B., N.M.**, 856 A.2d 847, 856 (Pa. Super. 2004) (citation omitted).